UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM K., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant.* | No. 20 CV 4563 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Sam K.[1] has been seeking Social Security disability insurance benefits for nearly a decade. Administrative law judges have denied his claim twice before, and reviewing courts have twice found error and remanded. Following the most recent rehearing, the ALJ issued another unfavorable decision. Although the ALJ paid close attention to the remand order, the ALJ's decision still has a gap that, for the reasons explained below, requires yet another remand to the Commissioner.

**I.  Legal Standards**

Because the Social Security Appeals Council did not assume jurisdiction over the latest ALJ decision, it is a final decision of the Commissioner and ripe for review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.984(a) (authorizing claimant to forgo Appeals Council review when federal court previously remanded case); *see also Weber*

---

* Under Federal Rule of Civil Procedure 25(d), Acting Social Security Commissioner Kilolo Kijakazi replaces former Commissioner Andrew Saul as the defendant in this case.

[1] I refer to plaintiff by his first name and the first initial of his last name to comply with Internal Operating Procedure 22.

*v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *4 (7th Cir. Aug. 19, 2021) (nonprecedential). Judicial review is confined to whether the ALJ applied the proper legal criteria and supported his decision with substantial evidence. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citation omitted).

While substantial evidence is not a high bar, the ALJ still must build an "accurate and logical bridge" between the evidence and his conclusion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). That is, the ALJ must provide "enough detail and clarity" in his reasoning "to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (citation omitted). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

## II.  Background

In 2007, Sam K. suffered a fall, injured his right knee, and had arthroscopic surgery to repair his meniscus. R. 421, 423, 426, 638–39.[2] He reinjured the same knee

---

[2] The administrative record, cited as R., can be found at [10-1], [10-2], and [10-3]. Bracketed numbers refer to entries on the district court docket. Other than in citations to the administrative record, referenced page numbers are taken from the CM/ECF header placed at the top of filings.

while working at Aldi grocery store in October 2010, and an MRI revealed a medial-meniscus tear, a mild chronic elongation injury, moderate to severe chondromalacia, and a small knee joint effusion. R. 420–21, 424. In February 2011, he underwent another surgery to repair the tear. R. 429–30.

By that July, after months of physical therapy and follow-up visits with treating surgeon Dr. Neena S. Szuch, Sam K. had "made good progress" but his right knee was "still sore and stiff with activity" and he had "throbbing pain" after standing for a period of time. R. 560. Still, Sam K. wished to resume his regular work schedule in the near future. *Id*. On exam, Dr. Szuch observed that Sam K.'s surgical incision was well healed, his range of motion in the right knee was 0–120 degrees, he had a small intraarticular effusion and mild quadriceps inhibition, and he ambulated "well without a limp." R. 561. Dr. Szuch opined that it was reasonable for Sam K. to do a four- to six-week trial of "regular duty and see if he is able to do his regular work without too much difficulty." *Id*. Three weeks later, Sam K. returned for another visit with Dr. Szuch and reported that "after 3–4 hours of work he develops stiffness and a sharp pain in the peripatellar region at the end of the day" and "[w]hen working a 10-hour shift, the knee swells and he is unable to tolerate this." R. 568. On exam, Dr. Szuch made the same observations as three weeks earlier, but also added that Sam K.'s quadriceps was strong and pain appeared to be at the patellofemoral region and occurred with compression. *Id*. Dr. Szuch recommended a functional capacity evaluation for the right knee and restricted Sam K. to working four hours per day in the interim. *Id*.

Sam K. completed the functional capacity evaluation in August 2011. R. 571. At the time, he was no longer working because his employer no longer had work that complied with his work restrictions. R. 573. At the evaluation, Sam K. reported doing light activities around the house, limiting himself as the day went on due to increased pain and fatigue. R. 573–74. The evaluation found, among other things, that Sam K. could occasionally lift up to 45 pounds, frequently lift up to 35 pounds (and could carry this amount up stairs), walk for up to 15 minutes before experiencing increased pain, and balance on his right leg for about one minute. R. 571, 577. The evaluator noted that Sam K. struggled with crouching due to increased knee pain, could kneel only on his left side, and could not crawl due to the pressure. R. 578.

The next month, Dr. Szuch met with Sam K. and determined that he remained "significantly restricted on the right side." R. 585. Dr. Szuch opined that Sam K. could lift no more than 45 pounds occasionally and 35 pounds frequently, could crouch for only short periods of time, and kneel restrictedly on his right side, "but all of this physical work can only be done for up to [a] 4-hour shift per day." R. 585, 688, 1950–51, 2118–19. Dr. Szuch determined that Sam K. could work full time if given sedentary work. *Id*. In deposition testimony related to a worker's compensation case, Dr. Szuch clarified that she meant Sam K. could perform four hours of "physical" work daily and then continue working for another four hours at the sedentary level. R. 2118–19, 2155.

In January 2012, plaintiff underwent an independent medical evaluation with Dr. Troy R. Karlsson. R. 2017–22. Dr. Karlsson agreed with Dr. Szuch's lifting

4

limitations, but disagreed with Dr. Szuch's work-hours limitation. R. 2021–22. Dr. Karlsson concluded that while Sam K. should not crawl, kneel, or squat more than occasionally, he was not temporarily or totally disabled and able to return to work without any restriction on "his number of hours of work whatsoever." R. 2022.

Sam K. returned to full work at Aldi without restriction in February, but reinjured his right knee within three days while unloading a pallet. R. 588. Dr. Szuch saw Sam K. in March and assessed that he suffered a "[r]ight knee injury which appears due to activity greater than [his] tolerance." R. 597–98. Dr. Szuch recommended that Sam K. take over-the-counter anti-inflammatory medication, apply ice as needed to help with pain, and wrap the knee with an ACE bandage to reduce swelling. *Id.* Dr. Szuch concluded that she would "once again recommend the same formal restrictions that were put in place before … [and] [w]ould recommend that this be a permanent restriction." R. 598. Dr. Karlsson conducted a second evaluation in April 2012 and reaffirmed his same opinion regarding Sam K.'s work limitations. R. 2023–27.

Sam K. applied for disability insurance benefits in May 2012, alleging that his disability began in February 2011. R. 30. Following a February 2014 hearing on Sam K.'s claim, an ALJ issued a decision denying benefits. R. 30–42. The Appeals Council denied review, Sam K. filed suit in district court to appeal the decision, the parties consented to the jurisdiction of by a magistrate judge, and the judge remanded the case to the Social Security Administration. R. 852–72. On remand, a different ALJ held a rehearing in September 2017 before issuing another unfavorable decision.

R. 740–58. Sam K. sued again, the parties consented to the exercise of jurisdiction by a magistrate judge again, and in August 2019, the judge remanded the case to the Commissioner once more. R. 1121–32.

The ALJ held another rehearing and issued a third unfavorable decision in April 2020. R. 1044–63. The ALJ applied the agency's five-step process to determine plaintiff's disability status, asking: (1) whether plaintiff is engaging in substantial gainful activity (i.e., work activity that involves doing significant physical or mental activities); (2) whether plaintiff has a severe impairment; (3) whether plaintiff's impairment is one that the Commissioner considers conclusively disabling; (4) if plaintiff does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether plaintiff is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520. If the agency cannot determine disability at a step, it goes on to the next step. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proving disability at steps one through four, but the burden shifts to the Commissioner at step five. *See Gedatus*, 994 F.3d at 898.

At step one, the ALJ found that plaintiff had not been engaged in substantial gainful activity from February 14, 2011 (the alleged onset date) through June 30, 2015 (his date of last insured). R. 1047. At the next step, the ALJ determined that Sam K. had the following severe, medically determinable impairment: status post-surgical repair, medial meniscus tear, right knee. *Id*. The ALJ found that Sam K.'s knee impairment significantly limited his ability to perform basic work activities. *Id*. And at step three, the ALJ determined that plaintiff's impairments were not

6

conclusively disabling under 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02. *See* R. 1050–55.

The ALJ then assessed plaintiff's "residual functional capacity" to complete the fourth step. R. 1056–62; *see* 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC represents the most physical and mental activity the claimant can do in a work setting—eight hours a day, five days a week—despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). This assessment considers: (1) all the relevant evidence, medical and non-medical; (2) all the claimant's limitations, including non-severe ones; and (3) the claimant's physical and nonphysical limitations. *See* 20 C.F.R. § 404.1545. In evaluating whether a claimant is disabled, the ALJ must consider all "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529.

The ALJ determined that Sam K. had the RFC to lift or carry up to 20 pounds occasionally and 10 pounds frequently, and that while he could never kneel on his right knee and could crouch for only brief periods, he had no limitations on his ability to sit, stand, or walk throughout an 8-hour workday. R. 1056. In making the latter finding, the ALJ relied on records and testimony indicating that Sam K. could walk up to one and a half blocks before stopping, stand for up to an hour but was never on his feet for more than four hours, and could perform personal care activities at home including cooking meals for up to an hour, two or three times a week. R. 1056–57.

7

The ALJ found that while plaintiff's medically determinable impairments could reasonably cause the symptoms plaintiff had alleged, plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with objective medical evidence in the record. R. 1057, 1062. The ALJ determined that it was "unclear" whether plaintiff's limited daily activities "reflected the claimant's medical condition or his lifestyle" because his wife prepared most meals both before and after his knee injury and "it appeared that the claimant and his wife lived alone, so his going shopping for twice a week for 20 minutes each could be the extent of shopping necessary to sustain their household." R. 1057. The ALJ found it reasonable to assume that if standing had interfered with plaintiff's ability to prepare a complete meal, "he would have provided that explanation especially since he was asked to for one." R. 1058.

The ALJ then adopted Dr. Karlsson's findings regarding Sam K.'s permanent work restrictions. R. 1059, 1062. The ALJ noted that Dr. Szuch and Dr. Karlsson generally agreed on the appropriate permanent restrictions for Sam K., with one exception: whether he could perform physical work for a complete workday or for only up to four hours. R. 1059. Although Dr. Karlsson saw plaintiff only twice, the ALJ found his recommendation persuasive because he "reviewed the previous medical records" and "identified specific findings supporting his opinion, [which] … is consistent with the evidence in the record as a whole." R. 1059. The ALJ acknowledged Sam K.'s consistent reports of pain and stiffness after standing three to four hours, but noted that he had been provided only conservative treatment and

8

Dr. Szuch never recommended a steroid injection or hyaluronic acid as a way to control the pain. R. 1060.

The ALJ found Dr. Szuch's opinion as clarified in her deposition "persuasive" but nevertheless found "the entirety of Dr. Szuch's opinions expressed over time not persuasive." R. 1061. According to the ALJ, "reviewing the complete record did not find an objective reason for such limitation." R. 1062. The ALJ pointed to the functional capacity evaluation's finding that plaintiff could tolerate standing up to 45 minutes at a time and inferred from this that Sam K. could stand for more than four hours out of a typical workday. *Id*. According to the ALJ, Dr. Szuch's work-hours limitations "appear[ed] to have been largely based on the claimant's subjective reports rather than examination evidence." *Id*. The ALJ wrote that even if he had adopted Dr. Szuch's opinion, Sam K. still "could have performed his past work as that work was generally performed." R. 1061. Ultimately, the ALJ determined that Sam K. "retained the ability to work at a light level of exertion." R. 1062.

Finally, the ALJ found that plaintiff was capable of performing past relevant work as a water sample tester because the work did not require activities precluded by plaintiff's RFC. R. 1062–63. The vocational expert testified that the Dictionary of Occupational Titles classified water sample tester as skilled work and required a light exertional level. *See* DOT no. 553.364-010; R. 1063. The ALJ concluded that plaintiff could perform his past relevant work as "performed generally because the exertional and non-exertional requirements do not exceed the limits presented in the residual functional capacity assessment." R. 1063.

9

**III.    Analysis**

In reviewing the ALJ's decision, a court "is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Instead, I must assess whether the ALJ applied the proper legal criteria, supported his decision with substantial evidence, and built an "accurate and logical bridge" between the evidence and his conclusion. *Peeters*, 975 F.3d at 641 (citation omitted); *Gedatus*, 994 F.3d at 900. An ALJ need not mention every piece of evidence in the record to build such a bridge, *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), but he must provide enough for the court to "trace the path of [his] reasoning." *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citation omitted).

This case comes down to whether the ALJ properly discounted Dr. Szuch's opinion. Social Security regulations give more weight to the medical opinions of treating sources who have a sustained relationship with the claimant. *See* 20 C.F.R. § 404.1527(c). The regulations adopt this view because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairment and can "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2). In fact, when evaluating opinion evidence for claims filed before March 27, 2017, an ALJ must give a treating source's medical opinion controlling weight if it "is well-supported by medically acceptable

10

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.*; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). If an ALJ discounts a treating physician's opinion, he must provide "good reasons" for doing so. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021). In other words, the ALJ cannot reject a treating physician's opinion without a "sound explanation." *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) (citation omitted).

The ALJ's decision here lacks such an explanation. Dr. Szuch was Sam K.'s treating surgeon and maintained an ongoing treatment relationship with him for months after his surgery. Yet the ALJ adopted the opinion of Dr. Karlsson—who saw plaintiff only twice and had no treatment relationship with him. But the "contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). Aside from his conclusion that Dr. Karlsson's opinion was supported by the entirety of the record, the ALJ did not explain why Dr. Karlsson's opinion should be given more weight than Dr. Szuch's. And even if the ALJ had a sound basis for not giving Dr. Szuch's opinion controlling weight, the ALJ was still required determine the proper weight of her opinion after considering "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ skipped this step too.

The ALJ asserted that the record did not contain an objective reason for Dr. Szuch's limitations. Yet the ALJ offered only one piece of record evidence (other than Dr. Karlsson's opinion) to undermine Dr. Szuch's opinion: the functional capacity evaluation's finding that plaintiff could tolerate standing up to 45 minutes at a time. R. 1062. The ALJ reasoned that if Sam K. could stand for up to 45 minutes at one time, then he could stand for more than four hours in a day. *Id.* That inference was unreasonable. The ability to stand for 45 minutes at a time does not demonstrate that a person is able to stand for over four hours in a day, let alone perform more than four hours of physical work in a day. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (ability to walk 50 feet does not demonstrate ability to stand for six hours). Dr. Szuch's opinion was not inconsistent with the functional capacity evaluation.

What's more, the ALJ erred by failing to grapple with evidence supporting Dr. Szuch's opinion. *See Hardy*, 908 F.3d at 312. For example, the ALJ did not engage with evidence of plaintiff's decades-long history of consistent employment before his injury, limited range of motion in his right knee for months following surgery, consistent reports of pain, reinjury upon returning to work following Dr. Karlsson's evaluation, and Dr. Szuch's repeated recommendations to limit his work following physical examinations of the knee on which she operated. To discount Dr. Szuch's opinion, the ALJ needed to identify a problem with her medical techniques or point to substantial evidence that undermined her opinions. The ALJ didn't do so. As the Commissioner acknowledges, the ALJ's speculation about alternative treatments and plaintiff's lifestyle were not valid reasons for discounting plaintiff's subjective

12

complaints. *See* [20] at 12. Other than conclusory statements that Dr. Szuch's opinion lacked an objective basis, the ALJ failed to explain why he rejected the opinion of the surgeon with an ongoing treatment relationship with plaintiff. The mere fact that the ALJ recited certain medical evidence in other parts of his opinion does not suffice—the ALJ needed to provide a traceable path from the evidence to his conclusion. Because the "ALJ's decision cannot be defended on a basis not articulated in [his] order," the ALJ's RFC determination is necessarily flawed. *See Hardy*, 908 F.3d at 313.

The ALJ's error appears to stem, at least in part, from confusion over the proper reading of Dr. Szuch's opinion. The last time this case was up for review, the magistrate judge interpretated Dr. Szuch's work-limitations recommendation to mean that Sam K. could do either (1) four hours of physical work in a day, and then stop working entirely, or (2) eight hours of sedentary work per day. R. 1127–28. On remand, the record was supplemented with Dr. Szuch's deposition testimony clarifying her meaning: Sam K. could perform either (1) full-time sedentary work, or (2) sedentary work "on top of" four hours of physical work to complete a full workday. R. 2118–19, 2155. The ALJ correctly observed that the new deposition evidence supported his earlier interpretation of Dr. Szuch's statement, and he found the clarified opinion persuasive. R. 1061. Nevertheless, to comply with the remand order's interpretation, the ALJ found "the entirety of Dr. Szuch's opinions expressed over time not persuasive." *Id*.

13

But Dr. Szuch's deposition testimony did not reveal any inconsistency in her opinions over time. Instead, it offered new and compelling grounds to depart from the magistrate judge's interpretation. The law of the case doctrine requires a lower court (or in this case, the ALJ) "to conform any further proceedings on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart." *Law v. Medco Research, Inc.,* 113 F.3d 781, 783 (7th Cir. 1997). New evidence can furnish compelling grounds for departure from a previous ruling. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998); *see also Curran v. Kwon,* 153 F.3d 481, 487 (7th Cir. 1998). On remand, the ALJ should rest his analysis on Dr. Szuch's clarified opinion that Sam K. could daily perform either full-time sedentary work, or up to four hours of physical work supplemented by sedentary work.

Finally, as the Commissioner acknowledges in his brief, *see* [20] at 11, the ALJ erred in finding that even if he adopted Dr. Szuch's limitations, Sam K. could have performed his past work as a water sample tester. The vocational expert testified that if a person was limited to being on their feet for no more than four hours a day, they could not perform the water sample tester job, either as plaintiff performed it or as generally performed. R. 1082–83. The ALJ erred in ignoring this part of the vocational expert's testimony. *Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014) (ALJ "cannot ignore a line of evidence contrary to [his] conclusion"). As Sam K. points out and the Commissioner does not dispute, if the ALJ had adopted Dr. Szuch's opinion, the Medical-Vocational Guidelines would direct a finding of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.06. So the error was not harmless.

Sam K. asks that I remand for an award of benefits. But while the ALJ did not advance a sound explanation for discounting Dr. Szuch's opinion, an explanation is possible. On remand, the ALJ must give Dr. Szuch's medical opinion controlling weight unless it is not supported by medically acceptable clinical techniques or is inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527; *Punzio*, 630 F.3d at 710. If the ALJ identifies inconsistent substantial evidence in the record (which he did not do this time around), the ALJ then must "determine what weight [Dr. Szuch's] opinion was due under the applicable regulations." *Larson*, 615 F.3d at 751 (citing 20 C.F.R. § 404.1527(d)(2)). To do so, the ALJ "must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g* (Aug. 30, 2018) (citation omitted). These are questions for the ALJ to determine, based on the entire record and any further proceedings, on remand.

## IV.  Conclusion

The case is remanded to the Commissioner. Enter judgment and terminate case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  December 3, 2021